IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUELA TAN,<br><br>  Plaintiff,<br><br>  v.<br><br>CITIGROUP LONG TERM,<br>METROPOLITAN LIFE INSURANCE<br>COMPANY,<br><br>  Defendants.<br>_____/ | No. C 05-00929 WHA<br><br>**ORDER GRANTING LIMITED DISCOVERY ON POTENTIAL CONFLICT OF INTEREST** |

### INTRODUCTION

In this action challenging defendants' denial of plaintiff's claim for long-term disability benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1132, plaintiff seeks discovery as to whether the determination was influenced by a conflict of interest. This order **GRANTS** discovery.

### STATEMENT

From February 16, 2000, through March 16, 2003, plaintiff worked as an operations manager at Citibank, a subsidiary of Citigroup Inc. She was covered by Citibank's long-term disability ("LTD") benefit plan. Defendant Metropolitan Life Insurance Company ("MetLife") issued the group-insurance policy that funded and administered the plan. An employee seeking benefits was required to provide MetLife proof of disability, evidence of continuing disability, proof of "Appropriate Care and Treatment," information about "Other Income" benefits and any

1  other medical information related to his or her disability upon MetLife's request (TAN 00060).
2  The plan provided its administrators with significant discretionary authority to interpret the
3  terms of the plan, to determine questions of eligibility for coverage or benefits and to make
4  related findings of fact. Such decisions were "given full force and effect" (TAN 00003, 00091).

5        Plaintiff underwent a craniotomy to remove a brain tumor in 1995. She recovered and
6  went back to work for a number of years. In 2003, she reported medical difficulties performing
7  her job responsibilities. She stopped working on March 27, 2003, and applied for disability.
8  Her claim for benefits included a letter dated May 30, 2003, completed by Dr. Kent Andrews,
9  Ph.D., her mental-health provider and neurologist. In it, Dr. Andrews stated that plaintiff
10 reported "on-going continuous head pain" that intensified when she engaged in stressful
11 activities, led to nausea, vomiting, depression, withdrawal, distraction, difficulty concentrating
12 and sleep disturbance—all of which prevented her from performing "the essential functions of
13 her job" (TAN 00446). MetLife approved plaintiffs' claim for short-term disability ("STD")
14 benefits through June 25, 2003, but later denied her LTD claim. The denial letter informed
15 plaintiff that her medical records did not adequately establish that she could not perform her job
16 responsibilities (TAN 00318–319). Plaintiff appealed. She provided MetLife with updated
17 medical records that further supported her alleged disability.

18       MetLife then referred the claim to Dr. Tracey Schmidt, M.D., for independent medical
19 review. No independent medical review was conducted. Dr. Schmidt's review was limited to
20 the materials selected by MetLife. The records MetLife provided Dr. Schmidt were incomplete.
21 Specifically, Dr. Schmidt did not receive the reports Dr. Andrews completed on April 11, 2003,
22 and May 30, 2003. MetLife also failed to include a description of plaintiff's job
23 responsibilities. Instead, it merely advised Dr. Schmidt that plaintiff's occupation was
24 "sedentary in nature." Dr. Schmidt concluded that the medical evidence provided did not
25 demonstrate that plaintiff was disabled under the plan (TAN 00269–272).

26       MetLife denied plaintiff's appeal. By letter dated January 20, 2004, MetLife advised
27 plaintiff of its final decision, concluding that, "we've not been furnished with medical evidence
28 of a physical functional capacity impairment that would result in functional limitations that

1 would preclude your ability to perform the essential functions of your Own Occupation as of
2 March 27, 2003 and ongoing" (TAN 00267–277).
3   Plaintiff commenced this action on March 4, 2005.  On September 29, 2005, the Court
4 heard defendants' motion for summary judgment.  During the hearing, it became clear that
5 MetLife had lost portions of the administrative record.  It was thus impossible to discern exactly
6 which documents were reviewed by Dr. Schmidt or had influenced the final decision.  It also
7 became clear that certain medical reports that were in MetLife's file were <u>not</u> supplied to
8 Dr. Schmidt.  Following the hearing, both sides were allowed to file supplemental briefs on the
9 issue of whether discovery is appropriate.

**ANALYSIS**

**1.   SCOPE OF REVIEW.**

Whether or not MetLife's determination was tainted by a conflict of interest governs the ultimate standard of review.  A district court generally reviews an administrator's decision to deny benefits de novo.  When the plan's language unambiguously vests the administrator with discretion to determine eligibility for benefits or construe the plan's terms, however, an abuse of discretion standard applies.  Yet, if "material, probative evidence" of a conflict of interest tends to demonstrate "that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary," review is de novo.  *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1109 (9th Cir. 1999).

Here, the plan explicitly granted MetLife broad discretion.  It vested claims administrators with discretion to interpret its terms, determine questions of eligibility for coverage or benefits, and make any relevant findings of fact.  Such decisions were given full deference as long as they were not arbitrary or capricious.  Given that MetLife was also the funding source, its decisional authority created at least an apparent conflict of interest.  This, however, is not enough to trigger de novo review.  *See ibid.*  The issue is whether discovery should be allowed to explore whether MetLife's apparent conflict of interest tainted its decision to deny her claim.

3

2. **STANDARD FOR PERMITTING DISCOVERY.**

There is no Ninth Circuit decision on point, but other judges have addressed this issue. In *Medford v. Metropolitan Life Ins. Co.*, 244 F. Supp.2d 1120, 1128 (D. Nev. 2003), Judge Leen stated (internal citations omitted):

> When looking for evidence of a conflict of interest to determine the correct standard of review, the district court is not limited to the administrative record before the plan administrator at the time the denial was made. Instead the district court should consider what additional evidence is required "to enable the full exercise of informed and independent judgment." The district judge will have to exercise his discretion in determining what, if any, evidence outside the administrative record will be considered in determining the correct standard of review and in actually reviewing the decision to terminate benefits.

Similarly, in *Hensley v. Northwest Permanente Retirement Plan*, 5 F. Supp.2d 887, 895 (D. Or. 1988), Judge Stewart permitted depositions of a claims administrator regarding a potential conflict of interest. And, the Fourth Circuit has authorized depositions of an administrator's physicians in order to assess his qualifications to render opinions relating to claims. *Bedrick v. Travelers Ins. Co.*, 93 F.3d 149, 153 (4th Cir. 1996). As well, the court in *Bennett v. Unum Life Ins. Co. of America*, 321 F. Supp.2d 925, 932 (E.D. Tenn. 2004), held that "discovery of specifically identified conflicts of interest, bias . . . on the part of the administrator is permissible where a claimant can show good cause to believe such procedural challenges exist." In reaching this ruling, the court invoked Rule 26(b)(1), which provides that courts may "[f]or good cause . . . order discovery on any matter relevant to the subject matter involved in an action." The court further noted that in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), the United States Supreme Court held that an administrator's conflict of interest is relevant to a court's review of a decision to deny benefits.

On the other hand, the court in *Newman v. Standard Ins. Co.*, 997 F. Supp. 1276, 1280 (C.D. Cal. 1998), denied a similar request for discovery on a potential conflict of interest. It cautioned that if any plaintiff who demonstrates an apparent conflict of interest could conduct discovery, then "every ERISA case involving an administrator who is also the Plan funding source would involve far-reaching, open-ended, nearly limitless discovery." According to the court, this would unreasonably increase litigation expenses—-an outcome that "flies in the face

4

of ERISA litigation." *Ibid.* It is important to note, however, that the court's disapproval did not extend to all discovery aimed at revealing an actual conflict of interest. Rather, the court's criticism only concerned the "far-reaching discovery" plaintiff sought without sufficient justification. *Ibid.*

Here, plaintiff has demonstrated good cause. MetLife failed to provide Dr. Schmidt, whose evaluation justified the denial, with plaintiff's entire file for review. Specifically, it neglected to submit the letters Dr. Andrews wrote in support of plaintiff's alleged disability dated April 11, 2003, and May 30, 2003 along with the record for evaluation. The latter is particularly revealing. In it, Dr. Andrews stated that plaintiff's head pain caused nausea, vomiting, depression, withdrawal, distraction, difficulties concentrating, tearfulness and sleep disturbance which intensified her symptoms. Dr. Andrews further emphasized that "[t]he severity of symptoms prevents [plaintiff] from performing the essential functions of her job" (TAN 00446). Though Dr. Schmidt did receive the letter Dr. Andrews completed on October 3, 2003, that subsequent record mentions fewer alleged difficulties than those just discussed (TAN 00287).

MetLife also failed to provide Dr. Schmidt with a description of plaintiff's actual responsibilities as an operations manager at Citibank. Instead, it simply noted that her occupation was "sedentary in nature." This information could not have meaningfully contributed to, and was reasonably likely to have prejudiced, Dr. Schmidt's review. A position as an accountant, for example, is just as sedentary as a job collecting tickets at a movie theater. But it goes without saying that these occupations require very different types of training and abilities. Thus, MetLife's overly-vague description was arguably meaningless for purposes of considering plaintiff's disability claim and arguably prevented Dr. Schmidt from effectively evaluating plaintiff's claim.

Moreover, MetLife now admits that it lost some of plaintiff's supporting records. It remains uncertain what records were missing, the information they contained or whether they likely would have influenced Dr. Schmidt's evaluation. As such, MetLife's failure to carefully maintain plaintiff's records may have prejudiced plaintiff's claim. This raises a reasonable

suspicion that MetLife's apparent conflict of interest tainted its determination. For the foregoing alone, discovery is warranted to get to the bottom of how MetLife went about processing the claim.

The Court is also concerned about inaccuracies in defendants' briefing to plaintiff's opposition that plaintiff's counsel raised at the summary judgment hearing. Defendants' reply contained at least the following three misstatements regarding Dr. Schmidt's review:

- "Dr. Schmidt was provided with and reviewed the personal job description and the job evaluation that [p]laintiff herself entitled the 'job description'" (Reply 4);
- "The Administrative Record shows that all the information received by MetLife up to the time of the appeal decision was given to Dr. Schmidt for review and that Dr. Schmidt considered the opinions of Dr. Andrews" (Reply 9); and
- "Dr. Schmidt reviewed and considered the Personal Profile Evaluation and a Performance Management Process that were completed by Tan and that described her job duties" (Reply 9).

As noted above, however, Dr. Schmidt was only informed that plaintiff's position was sedentary, did <u>not</u> receive a copy of plaintiff's job description, and was <u>not</u> apprised of at least two of Dr. Andrews' letters. Although counsel apologized for these inaccurate statements at the hearing, counsel must always be vigilant to check the accuracy of their briefs. These were affirmative statements. They were flat-out wrong and misleading.

Furthermore, defendants pronounced that "there is absolutely no evidence in the Administrative Record indicating that [p]laintiff's job entailed 'constant interactions with employees' or required her to be 'physically fit and active'" (Reply 3). This claim is dubious. Citibank's "Action Plan" indicated that plaintiff was required to engage in considerable supervisory interactions with employees and a variety of "active" duties (TAN 00385–386).

6

As such, the Court finds that discovery is warranted regarding, but not limited to, the independence and neutrality of Dr. Schmidt.[*]

## CONCLUSION

Plaintiff's request to conduct limited discovery on the issue of whether MetLife's determination was influenced by a conflict of interest is **GRANTED**. Both sides may take reasonable discovery. A separate scheduling order will issue for the remainder of the case.

**IT IS SO ORDERED.**

Dated: October 6, 2005.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[*] In response to the Court's questions, Attorney William Lee, counsel for MetLife, denied having any knowledge or information as to whether MetLife has previously retained Dr. Schmidt to evaluate other disability claims. In actuality, however, it has. In *Audino v. Raytheon Co. Short Term Disability Plan*, 2005 U.S. App. LEXIS 6124, **5–7 (5th Cir. 2005), the court concluded that MetLife acted arbitrarily and capriciously in denying Gloria Audino's disability claim. In making its determination, MetLife referred the claim to Dr. Schmidt and relied heavily on Dr. Schmidt's opinions. According to the court, this reliance was misplaced. It noted that Dr. Schmidt committed various oversights, minimized probative evidence, and made incorrect statements throughout the report. MetLife also contracted with Dr. Schmidt to review Susan Johnson's claim for benefits. Just as in the instant case, Dr. Schmidt's noted that Johnson's file was insufficient to establish her eligibility because it lacked test results that her doctors could have or should have ordered. *Johnson v. Metropolitan Life Ins. Co.*, 2004 U.S. Dist. LEXIS 19830, *5–6 (D. Minn. 2004). Attorney Lee said earlier in the hearing that he had represented MetLife in many ERISA cases and understood its procedures and abbreviations in the administrative record. In light of that extensive background, it is surprising that Attorney Lee had no prior information on Dr. Schmidt. Discovery, however, will presumably develop the full extent of Dr. Schmidt's on-going role for MetLife.